**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHERYL DILEO,

                Plaintiff,

        v.

RAY MABUS, *Secretary of the Navy*, and
TRAVIS DAVIS, *individually and in his
Official Capacity as Lieutenant Commander
of the Navy*,

                Defendants.

Civil Action No. 14-4246 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

      This matter comes before the Court on Defendant Secretary of the Navy Ray Mabus's

("Defendant")[1] Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56,

on Plaintiff Cheryl DiLeo's ("Plaintiff") claims of employment discrimination. (ECF No. 35.)

Plaintiff filed opposition to the motion (ECF No. 38), and Defendant replied (ECF No. 43). The

Court has carefully considered the parties' submissions and decides the matter without oral

argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and other good cause

shown, Defendant's Motion for Summary Judgment is **GRANTED**.

---

[1] Plaintiff's First Amended Complaint sets forth two counts, asserting three claims for relief: a claim for violation of the Equal Protection Clause under the Fourteenth Amendment; a claim under Title VII of the Civil Rights Act of 1964; and a claim of intentional infliction of emotional distress and defamation against Lieutenant Commander Travis Davis ("Davis"), individually and in his official capacity. (ECF No. 14.) On July 21, 2015, this Court dismissed the Fourteenth Amendment claim and all claims asserted against Davis with prejudice. (ECF No. 24.) Accordingly, Plaintiff's sole remaining claim is the Title VII claim as asserted against Defendant in his official capacity — no claim was asserted against Defendant in his individual capacity.

## I.    Background

This action arises from the United States Navy's solicitation of applications to fill a Supervisory General Supply Specialist vacancy in its Munitions Command at Naval Weapons Station Earle ("NWS Earle") in Colts Neck, New Jersey in Fall 2012. (Am. Compl. ¶¶ 1-2, ECF No. 14.) The Navy sought "a division head, capable of supervising personnel in all operational functions of the Material Management department[,]" with specialized ordnance experience. (Def.'s Statement of Undisputed Facts ("SOF") ¶¶ 10-11, ECF No. 35-2.) Plaintiff, a Caucasian female and a then-senior civilian employee of the United States Navy, applied for the position. (Pl.'s Opp'n Br. 5, ECF No. 38.) At the time of her application, Plaintiff "held the position of Management and Program Analyst," and had served approximately thirty-five years as a civilian employee in the United States Navy. (Am. Compl. ¶¶ 17, 21.) Thomas Dowdy ("Dowdy"), an African-American male civilian employee working as a Material Handler Supervisor, also applied for the position. (SOF ¶ 52.)

At the close of the application period, the Navy Human Resources Office issued a "Merit Promotion Certificate of Eligibles," listing the qualified candidates drawn and evaluated from the applicant pool. (SOF ¶ 13; Def.'s Ex. D, ECF No. 35-10.) Eight candidates were named, including Plaintiff and Dowdy. (SOF ¶ 14.) The list of eligible candidates was subsequently sent to the designated selecting official, and Officer-in-Charge of the Command, Lieutenant Commander Travis Davis ("Lieutenant Commander Davis"). (Id. ¶ 16.) Lieutenant Commander Davis, in turn, delegated the initial evaluation to a recommendation panel, and selected Deputy Officer in Charge Jan Zaleski ("Deputy OIC Zaleski") to organize and lead the panel. (Id. ¶¶ 18-19). Deputy OIC Zaleski asked Marine Corps Gunner Francisco Amaya ("Gunner Amaya"), and

2

Fred Reinertsen ("Reinertsen"), a civilian employee of the Command, to participate on the panel. (*Id.* ¶ 20.)

Initially, the panel individually rated each of the candidates against a rubric "of ten skill categories, based on the position description, . . . on a scale of 1 to 10, with 10 indicating the strongest rating." (*Id.* ¶ 21.) Gunner Amaya and Reinersten both scored Dowdy higher than Plaintiff. (*Id.* ¶ 23.) Deputy OIC Zaleski, however, scored Plaintiff twenty-four points higher than Dowdy. (*Id.* ¶ 24.) While all three panel members agreed that Plaintiff and Dowdy were the top two candidates, they decided to re-score all of the applicants given the disparity between the initial scores. (*Id.* ¶ 25.) Upon re-scoring, Plaintiff and Dowdy were again the top two candidates. (*Id.* ¶ 26.) Plaintiff received a total score of 276, whereas Dowdy received a total score of 225. (*Id.* ¶ 27.) The panel members selected Plaintiff as the most qualified applicant and delivered their recommendation to Lieutenant Commander Davis on December 2, 2012. (*Id.* ¶¶ 28-29.)

Lieutenant Commander Davis thereafter reviewed the score sheets and conducted his own evaluation. Utilizing the same rubric as the panelists, Lieutenant Commander Davis scored Plaintiff and Dowdy as the top two candidates, with Plaintiff receiving a score of eighty-three and Dowdy receiving a score of ninety-four. (*Id.* ¶¶ 32-33.) Lieutenant Commander Davis found that Dowdy's work experience, compared to Plaintiff's experience, displayed stronger leadership skills relative to the position. (Davis Decl. ¶ 16, ECF No. 35-3.) In that regard, Lieutenant Commander Davis observed that Dowdy had twenty-six years of active military duty, which included "ordnance management experience," and "had held supervisory positions in large-scale ordnance operations." (SOF ¶¶ 49-50.) In contrast, Lieutenant Commander Davis found that Plaintiff had "not held a leadership or ordnance management position" since 2005 and, unlike

3

Dowdy, did not have a college degree in management. (SOF ¶¶ 53, 57.) Plaintiff's score was also based on Lieutenant Commander Davis's concerns regarding her work performance. (Davis Decl. ¶ 9.) As Plaintiff's second-level supervisor, Lieutenant Commander Davis observed that Plaintiff had been inattentive to her responsibilities. (*Id.*) In particular, Lieutenant Commander Davis noted that Plaintiff "facilitated only two of the five [LEAN][2] events [the Command] required," "failed to submit monthly operations reports to Command headquarters on several occasions," and "he had to remind her consistently to complete travel orders that . . . Davis needed in advance of his work-related travel." (*Id.* ¶ 10; SOF ¶¶ 40-41.) Furthermore, Lieutenant Commander Davis had reservations about Plaintiff's attitude toward the Command following a conversation the two had regarding an unrelated matter. (Davis Decl. ¶ 13; SOF ¶ 42.) Lieutenant Commander Davis ultimately concluded that Dowdy was better suited for the position. (Davis Decl. ¶ 8.)

Prior to making a final determination, Lieutenant Commander Davis contacted Albert Haughton ("Haughton") of the Navy's Human Resources Office to discuss the selection process, to wit, "whether he was bound to accept the panel's recommendation." (SOF ¶¶ 60, 63.) Lieutenant Commander Davis explained to Haughton his reasons for reaching a different conclusion than the panel members. (SOF ¶ 66.) According to Haughton, Lieutenant Commander Davis relayed that he based his decision on his personal observations and knowledge of Plaintiff's work performance, and felt that "the panel may not have given full weight to" Dowdy's military experience. (SOF ¶¶ 67-69; *see also* Haughton Decl. ¶ 5, ECF No. 35-5.) Haughton advised Lieutenant Commander Davis that "as the selecting official for the position,

---

[2] Plaintiff represented at her deposition that LEAN represented the United States Navy's strategy for improving and streamlining current procedures in a given department. (*See* Def.'s Ex. U ("DiLeo Dep.") 28:13-22, ECF No. 35-27.)

4

[Lieutenant Commander] Davis was not bound to agree with the recommendation panel's opinion if it differed from his own assessment" and that "it [was] not unprecedented for a selecting official to deviate from a panel's recommendation." (SOF ¶¶ 73-74.) Accordingly, on or around December 4, 2012, Lieutenant Commander Davis announced Dowdy as his selectee and recipient of the supervisory position. (SOF ¶ 76; Davis Decl. ¶ 18.)

Plaintiff, on February 26, 2013, filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (SOF ¶ 104; Def.'s Ex. P, ECF No. 35-22.) In her charge, Plaintiff alleged that she had not been selected for the supervisory position on account of her race, gender, and age. (SOF ¶ 105.) Plaintiff claimed that Lieutenant Commander Davis selected Dowdy because, like Davis, he was a young, African-American male. (*Id.*) On April 29, 2014, Plaintiff withdrew her complaint in order to file this suit.[3] (SOF ¶ 106; Def.'s Ex. Q, ECF No. 35-23.) Defendant now moves for summary judgment on Plaintiff's Title VII claims. (ECF No. 35.)

## II.    Standard of Review

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 447 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving

---

[3] On April 30, 2014, the EEOC dismissed Plaintiff's EEO Complaint, finding that 180 days had passed since her initial filing and no final action had been taken by the EEOC. (*See* Def.'s Ex. Q, ECF No. 35-23.)

party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*,

447 U.S. at 248).

In evaluating the evidence, the Court must consider all facts and their logical inferences

in the light most favorable to the non-moving party. *See Curley v. Klem*, 298 F.3d 271, 276-77

(3d Cir. 2002). While the moving party bears the initial burden of proving an absence of a

genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving

party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*,

447 U.S. at 250. If the non-moving party fails to

> make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the
> burden of proof at trial[,] . . . there can be "no genuine [dispute] of
> material fact," [because] a complete failure of proof concerning an
> essential element of the non[-]moving party's case necessarily
> renders all other facts immaterial.

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986)).

## III.   Analysis

Title VII prohibits employers from discriminating against employees on the basis of race,

color, sex, religion, or national origin. 42 U.S.C. § 2000e-2(a). Where, as here, a plaintiff has not

presented direct evidence of discrimination, the plaintiff may prove employment discrimination

according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a

prima facie claim of employment discrimination. *Id.* at 802-03. In the context of reverse

discrimination, a plaintiff meets this initial burden by "present[ing] sufficient evidence to allow a

fact-finder to conclude that the employer is treating some people less favorably than others based

upon a trait that is protected under Title VII." *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999).

If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant to produce evidence that, if believed, would establish a legitimate, nondiscriminatory explanation for its treatment of the plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. At this stage, the defendant is not required to "prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the [defendant] must provide evidence that will allow the fact[-]finder to determine that the decision was made for nondiscriminatory reasons." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). If the defendant succeeds, the burden shifts to the plaintiff to proffer evidence sufficient to convince a reasonable fact-finder that the defendant's explanation is a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804-05.

In his motion for summary judgment, Defendant argues that Plaintiff cannot meet her initial burden of establishing a prima facie case of gender and race discrimination because the record is devoid of evidence from which a reasonable jury could conclude Defendant treated Plaintiff less favorably than others and did not select Plaintiff for the supervisory position because of her race and gender. (Def.'s Br. 20, ECF No. 35-1.) Defendant also contends that even if Plaintiff was able to meet her initial burden under *McDonnell Douglas*, she is unable to establish that Defendant's legitimate nondiscriminatory reasons for his decision were pretext. (*Id.*)

The Court need not decide whether Plaintiff demonstrates a prima facie case of race or gender discrimination. Even if the Court assumes that Plaintiff meets this burden, the Court finds

that her claims nevertheless fail because she cannot overcome the *McDonnell Douglas* framework, to wit, that Defendant's decision was motivated by racial or gender animus.

Defendant proffered sufficient evidence that, if believed, establishes legitimate, nondiscriminatory explanations for not selecting Plaintiff for the position. Lieutenant Commander Davis did not select Dowdy over Plaintiff because Plaintiff was unqualified for the position. Indeed, Defendant conceded that Plaintiff was qualified. (*Id.*) Rather, Lieutenant Commander Davis selected Dowdy because he felt that Dowdy was more qualified than Plaintiff for the position. To that end, Lieutenant Commander Davis explained that Plaintiff's work experience, as compared to Dowdy's, did not demonstrate strong leadership and supervisory skill sets. (*Id.* at 21.) Lieutenant Commander Davis's decision also considered Plaintiff's work performance and inattentiveness to her job responsibilities. (*Id.* at 21-22.) The Court concludes that Defendant's stated nondiscriminatory reasons adequately satisfy his "relatively light" burden. *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

Consequently, the burden shifts back to Plaintiff to rebut Defendant's proffered reasons. To survive summary judgment, Plaintiff must present "evidence from which a fact[-]finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). In other words, Plaintiff's evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact[-]finder could rationally find them 'unworthy of credence.'" *Burton*, 707 F.3d

at 427 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). The Court finds that Plaintiff's evidence falls short of this standard.

Plaintiff sets forth several arguments to demonstrate pretext. First, Plaintiff argues that Lieutenant Commander Davis's rejection of the selection panel's recommendation was unprecedented and baseless. (Pl.'s Opp'n Br. 23-25, 33, ECF No. 38.) To that end, Plaintiff disputes Lieutenant Commander Davis's assessment of the two candidates by pointing to the selection panel's evaluation, which found that Dowdy, unlike Plaintiff, lacked actual knowledge of the relevant systems and experience working at the Command. (Dougherty Decl., Ex. C (Zaleski's August 2013 EEOC Declaration) 220, ECF No. 38-1.) Plaintiff also asserts that Lieutenant Commander Davis had limited interaction with and supervision of Plaintiff and her work because he had been staffed at NWS Earle for six months prior to the announcement. (Pl.'s Opp'n Br. 25.) The Court finds this evidence insufficient to discredit Defendant's explanations. Plaintiff "cannot simply show that [Lieutenant Commander Davis's] decision was wrong or mistaken." *Fuentes*, 32 F.3d at 765. Indeed, "the factual dispute at issue [here] is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* The record indicates that Plaintiff and Dowdy were both qualified candidates. While Lieutenant Commander Davis's independent review yielded different scores than the recommendation panel, this difference does not evidence discrimination. *See id.* at 767 (explaining that "the fact that the relevant decisionmakers disagree about the plaintiff's qualifications does not evidence discrimination" (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 533 (3d Cir. 1992))). Plaintiff has provided no evidence showing that the review and scores were somehow improper, aside from her subjective belief to the contrary.

Moreover, Plaintiff's claim that Lieutenant Commander Davis's rejection of the panel's recommendation diverged from the selection and hiring procedures and was unprecedented is wholly unsubstantiated. In fact, the evidence is to the contrary. The Navy's "LANDTORDCOM INSTRUCTION 12335.1," on its Merit Staffing Program, explicitly provides that "[t]he selecting official reserves the right to select or non-select from any certified list of candidates." (Def.'s Ex. G 149, ECF No. 35-13.) In addition, Haughton certified in his Declaration that Lieutenant Commander Davis was neither bound to agree with the recommendation panel nor was it unprecedented for a selecting official to deviate from a panel's recommendation. (Haughton Decl. ¶¶ 7-8.) It is undisputed that Lieutenant Commander Davis ultimately had the authority and discretion to a make a different selection. (*See* Pl.'s RSOF ¶¶ 73-74, ECF No. 38-3.)

Next, Plaintiff contends that Lieutenant Commander Davis's explanations are not worthy of credence because he never made negative comments nor raised any concerns about her work performance prior to the selection process. (Pl.'s Opp'n Br. 26-28.) Rather, Plaintiff argues, Lieutenant Commander Davis's explanations, as well as his inconsistent statements made during the EEOC investigation, are a post-hoc effort to substantiate his decision. (*Id.* at 27-30.) The record does not support Plaintiff's contentions. Indeed, Lieutenant Commander Davis raised his concerns regarding Plaintiff's failure to complete the required "LEAN events" as early as 2012. (Zaleski August 2013 EEOC Declaration 215.) Defendant's SOF and Plaintiff's RSOF, with respect to the "LEAN events," are particularly instructive here. Defendant's SOF, paragraph 34, provides: "LCDR Davis's downward scoring of [Plaintiff], relative to the panel, was based, in part, on his concerns that [Plaintiff] had not been attentive to her responsibilities as a Management and Program Analyst." (SOF ¶ 34.) In response, Plaintiff submits:

> NOT AGREED as to LCDR Davis basing, in part, his downward scoring of the panel's rating of [P]laintiff upon his "concerns" that [P]laintiff had been "inattentive to her employment responsibilities."
>
> Counterstatement of Facts as to 34:
>
> a) As set forth in greater detail and annotated in [P]laintiff's Declaration of 7/29/13 and in her 5/15/16 Declaration, the only instance in which LCDR Davis ever expressed any "concern" relating to [P]laintiff's work performance and her "attention" was when he called his Deputy [OIC Zaleski], asking her why all 5 LEAN events were not prepared for 2012, there being three outstanding.

(RSOF ¶ 34(a).) Accordingly, even Plaintiff's response reflects her concession that, at the very least, Lieutenant Commander Davis expressed "concern" regarding her failure to prepare all five LEAN events in 2012. Similarly, Lieutenant Commander Davis relayed these concerns to Haughton prior to the selection announcement and well before the EEOC investigation. (SOF ¶¶ 64-68; Haughton Decl. ¶ 3.)

Finally, Plaintiff argues that Lieutenant Commander Davis displayed racial and gender bias favoring African-American employees, particularly Dowdy. (Pl.'s Opp'n Br. 31-32.) Plaintiff alleges that Lieutenant Commander Davis held closed-door, after-hours meetings with Dowdy prior to the selection announcement. (*Id.* at 31.) Plaintiff also alleges that Lieutenant Commander Davis greeted African-American employees with greater affection than Caucasian employees. In support, Plaintiff points to Deputy OIC Zaleski, Gunner Amaya, and Ordnance Operations Manager Nicholas Cuzzolino's ("Cuzzolino") Declarations,[4] certifying that they observed either Lieutenant Commander Davis's closed-door meeting with Dowdy or his friendlier greeting to African-American employees. (*Id.*) This evidence is insufficient to suggest

---

[4] These formal declarations, taken under penalty of perjury, were conducted and used as part of the EEOC's investigation.

11

that Plaintiff was treated differently because of her race or gender. Notably, Plaintiff acknowledged at her deposition that she neither observed the alleged meetings between Lieutenant Commander Davis and Dowdy, nor had knowledge of their purpose. (DiLeo Dep. 65:23-66:3.) Rather, Plaintiff stated that Deputy OIC Zaleski and Cuzzolino informed her of these meetings. (DiLeo Dep. 66:1.) Deputy OIC Zaleski certified that while she told Plaintiff she saw Dowdy in Lieutenant Commander Davis's office, she "did not discuss anything about the length of time or whether the door was open or shut." (Zaleski August 2013 Declaration 221.) Deputy OIC Zaleski also explained that "[Lieutenant Commander] Davis has an open door policy with everyone," and that "it would not be abnormal for [Dowdy] to stop in and have a conversation" since Lieutenant Commander Davis "like[d] to discuss sea stories." (*Id.*) Deputy OIC Zaleski further contended that "[t]hese meetings took place well before the selection process began." (*Id.*) Similarly, Cuzzolino stated that he witnessed Dowdy enter Lieutenant Commander Davis's "office after normal working hours and close the door" but had no knowledge of the topic of the conversation or the date. (Pl.'s Ex. E 239, ECF No. 38.)

With respect to the alleged greetings, Plaintiff again lacks first-hand knowledge. (DiLeo Dep. 66:4-11.) Instead, Gunner Amaya informed Plaintiff that, when he accompanied Lieutenant Commander Davis to the Command's waterfront, he observed Lieutenant Commander Davis give "two of the African[-]American[ ] [employees] a handshake[, bringing] them in closer to him and [giving] them a hug, while only extending his hand out for a handshake to all [the] other[ employees]." (Def.'s Ex. H 229, ECF No. 35-14.) The Court finds this evidence insufficient to demonstrate racial or gender animus. Furthermore, Plaintiff acknowledged at her deposition that she could not recall any instance of Lieutenant Commander Davis treating her unfairly because of her race or gender. (DiLeo Dep. 127:11-25.) Similarly, Deputy OIC Zaleski

12

certified in her declaration that she worked closely with Lieutenant Commander Davis until May 2014, and in that time, she "never once observed anything approaching discriminatory behavior" from Lieutenant Commander Davis. (Zaleski Decl. ¶ 13, ECF No. 35-4.)

In sum, the Court finds that Plaintiff has failed to rebut the nondiscriminatory motivation proffered by Defendant. Plaintiff neither presents evidence to discredit Defendant's proffered reasons, nor has she adduced evidence from which a reasonable fact-finder could conclude that an "invidious discriminatory reason was more likely than not" the motivating force behind Defendant's actions. *Fuentes*, 32 F.3d at 764. Despite the *McDonnell Douglas* burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The Court finds that Plaintiff has failed to meet this burden. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

## IV.   Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendant's Motion for Summary Judgment is granted. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** November 30th, 2016